Edward S. Conway, J.
This is an article 78 proceeding whereby petitioner, on behalf of himself and all others similarly situated, seeks an order declaring that petitioners who are permanent employees whose positions have been abolished, be allowed to "bump”, in order of seniority, any temporary, provisional or probationary employee in the same or substantially similar title in the entire layoff unit.
Petitioner Callahan is employed as a parole officer in the Department of Correctional Services. As a result of budgetary cutbacks, petitioner and 22 other parole officers were informed in January of 1976 that their positions were being abolished effective February 23, 1976. A meeting was held on January 28, 1976 with the Director of Personnel for the Department of Correctional Services and the petitioners were given, in order of seniority, a choice of "bumping” one of the 23 least senior parole officers in the Department of Correctional Services (all of them being probationary employees).
Petitioners are contending that they should be allowed the choice of "bumping” into any probationary position in the State-wide layoff unit, not just the least senior probationary positions, and more specifically, petitioner Callahan alleges that as a former parole officer in the Syracuse office he should have been given the opportunity to take the position of one *41 Donald Marchuka who is employed at the Auburn Correctional Facility (only 40 miles from Syracuse), rather than having been given the opportunity upon the abolition of his position to replace an employee at Elmira Reformatory (a much greater distance from Syracuse than is Auburn) which, in effect, constitutes laying off permanent employees while probationary employees are retained, which is contrary to the legislative intent and purpose of section 80 of the Civil Service Law.
The respondents argue that as 23 parole officer positions were abolished, it was necessary to cut back the numbers of parole officers working at the locations where the positions were being abolished, and the personnel office, following the Civil Service Law, rules and guidelines concerning layoffs, implemented this reduction in staff. Two lists of parole officers were prepared by personnel; a list of the 23 least senior parole officers in the entire department, and a list of the least senior parole officers in each location affected. All of the petitioners were called to a meeting and layoff procedures were explained to them as a group and individually. A list of parole officers being displaced was given each individual so that an opportunity to challenge seniority dates and standing was provided. Respondents further point out that Parole Officer Marchuka is employed at Auburn and his seniority date is October 8, 1964, and since Marchuka was the 27th least senior parole officer in the department, he was not within the group of 23 least senior in the entire agency.
As the Hon. Robert C. Williams held in Gerhard v Levine (Special Term, May 9, 1975), speaking of a memorandum of the Civil Service Department dated September 28, 1972 as to displacement procedures, which would also apply to the memorandum dated January, 1975, "Layoff Law and Procedure”, which is annexed to the respondents’ answer herein:
"While said memorandum does not have the force of law, it serves as the Department of Civil Service’s interpretation of the, as of then, uninterpreted statute. Statutory construction is the function of the courts but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court’s function is limited. Board v. Hearst Publications, 322 U.S. 111, 131. The administrative determination is to be accepted by the courts if it has 'warrant in the record’ and a reasonable basis in law. Matter of *42 Mounting & Finishing Company; Inc. v. McGoldrick, 294 N.Y. 104.
"Additionally, the record indicates that the statute in question was drafted in part by officials of the Department of Civil Service. An administrative interpretation which was contemporaneous with the enactment of a statute, and which was drafted by the very officials who helped draft the statute, is entitled to great weight.”
The procedures promulgated under section 80 of the Civil Service Law provide an eminently equitable layoff apparatus. A policy decision has been made to attempt to be fair to employees on a State-wide basis by implementing the reassignment plan so that employees would not have their seniority rights impaired by the arbitrary determinant of the locale of their employment. This system inevitably results in the hardship of relocation and the uprooting of families. However, such is the by-product of a sincere desire to do equity for the employees of this State when it is deemed necessary to cut back and eliminate positions. The effect of the Department of Civil Service’s interpretation of section 80 is not to deprive any employee the exercise of his seniority rights.
It is well established in the law that an action of an agency charged with the responsibility of administering a statute should be upheld by the courts if any fair argument can be made in support of such action (Matter of Wirzberger v Watson, 305 NY 507, 513). Here, in the court’s opinion, respondents have passed the fair argument test and there is a reasonable basis for the action taken by the respondents and the layoffs complained of were in conformity with the law.
The motion of the petitioners is therefore denied and the petition is dismissed.